I think the best way to illustrate the first problem with the board decision is to take a look at the structure of the primary reference on which the examiner relied in making obvious misrejections of the claims of issue. That reference is the Anderson reference, which is found in the appendix at page A160. It's a fairly extensive reference. It has 40 drawing sheets and over almost or actually over 40 columns. But most of the discussion of this reference hinges on three parts. First, the background of the invention, which from columns 1 through column 7 discusses some of what came before. Next, in the summary of the invention, there is a discussion of why what came before is not good. Why what came before should be criticized. What came before were the paper checks and the paper check system. It was described in great detail by Anderson. Multiple ways of implementing paper checks, multiple ways in which those paper checks could be transmitted, imaged, and otherwise dealt with. I'm looking here at columns 6 and 7, which is on A204 and A205, as well as another discussion on page A208, column 14. So we start there. We have these paper checks. There are a number of things you can do with them. Then we move to column 15, and that's where Anderson says, with regard to all embodiments, and I'm reading here column 15, line 45, in all embodiments, parties of all sizes gain substantial benefit from the use of the all-electronic system. And these aren't minor benefits. There's a reference to the substantially reduced, significantly reduced cost down on line 51. They don't say all electronic. They say the use of electronic documents. That is true. And they doesn't preclude the use of both electronic and paper documents, does it? And that is true with respect to printing out paper later in the process. There actually is a reference in the later part of this pattern that you could print out, for example, a page from your electronic document. But what is precluded specifically is the use of paper checks. This is referred to twice. First, bad paper checks are specifically identified as a common cause of fraud and security problems. And secondly, check stock envelopes, stamps, and photocopies, and incremental labor are the exact things identified as causing these significant costs from the prior hour. So I would say that, yes, there is the reference that you're calling for. Those are specifically criticized on two very important grounds, both security and cost. Then, after you have this distinction saying paper checks are bad for these reasons, then we get into the description of the electronic system, the description of the invention referring to processing electronic documents. What the end of the patent where it talks about the electronic document system. And ignore the middle part, where the patent specifically teaches away from the use of paper checks. It is the applicant's position that the board committed legal error when the board said that KSR allows you, just because the reference shows prior art is familiar, to conclude that that is not true. The actual, what the reference teaches as its preferred embodiments. Because the reference here teaches away. And there is no question that KSR did not take away this court's teaching away doctrine. Where is that specifically in the reference that it teaches away from paper checks? Well, there are a couple of spots you're on, but I would go back to the column that we were just discussing, which is column 15. And that's on page A209 in the appendix. And if you look at column 15, there are a number of references, but I'll highlight what I think are probably the two most important. If you look at line 25, it tells you that the electronic documents contemplated by the invention eliminate most of the common causes of bad transactions, such as bad paper checks. So that's an initial criticism of paper checks in that they cause fraud, they cause security problems, because you can have these bad paper checks. A second criticism of the paper checks is further down in the embodiment, and this is after the heading where it talks about all embodiments and parties of all sizes. On line 50, it says, in addition to the significantly reduced costs of creating and mailing a document, and then in line 51, no check stock, envelopes, stamps, photocopies, or incremental labor. When Anderson described the way you ought to do it as no check stock and getting rid of bad paper checks, those are very clear criticisms of the previous system of using paper checks. And those criticisms were never addressed by the board, and those criticisms are never addressed in the director's brief. They are glossed over, and when you look at the structure of Anderson, glossing over them makes no sense. They are the critical transition between the prior art and what is taught by Anderson, which is the electronic documents approach. Rather than deal with this language specifically, the board made an analysis of KSR that we believe is an error, and we believe is a legal error that this court can address, specifically on page A10 of the appendix. The court gives the following syllogism. Anderson is familiar with paper checks, and we would posit that in order to teach away from something, you have to be familiar with it. The board then says, this shows that paper checks were a well-known form of checks. We don't have any disagreement with the fact that paper checks were a well-known form of checks. And therefore, the use of paper checks with the all-electronic system of Anderson would be no more than the integration of a familiar element into a known system to yield a predictable result, see KSR. From the board's point of view, once you've shown you're familiar with a prior art element, that's all it takes under KSR. Case is over, we can do it. There's no even look at whether the teaching away is there, especially the clear teaching away that you find in Anderson. And if you take a look at KSR, that's completely inconsistent with KSR. In KSR, the Supreme Court took a careful look at whether there was teaching away before finding obviousness. The KSR court looked specifically at the expert reports of Teleflex and concluded that Teleflex has not shown anything in the prior art that taught away from the use of Asana. So unlike the board, the Supreme Court recognized in KSR that it is important to look at teaching away and see if it's present. The board failed to take that into account and that was a legal error because it's a misinterpretation of KSR. The second issue that also caused legal error by the board was its failure to address the lack of a reason for achieving the subject matter as a whole in this case. 103 says specifically that we look at obviousness in terms of the subject matter as a whole. And this court has found that that requirement is very important because it stops the hindsight map use of the claim to find obviousness. The point where you take, well, I've got this reference. Oh, I'm missing an element. I can go grab reference B. I'm missing an element. I'll grab reference C. I'm missing an element. I'll grab reference D. That's exactly what the examiner did in this case. And each time the examiner went off to find a new reference because something was missing, a new reason was pro offered. The reasons were not connected in any way. And, in fact, two of them were arguably inconsistent. The examiner said one of the reasons was that we need to reduce the use of memory. But then another reason given by the examiner was to create an electronic audit track, clearly something that was going to use more memory. This court's requirement that you have an actual reason that points toward the subject matter as a whole would have given the guidance necessary for the examiner not to go off on this find a reference here, find a reference there, and put it all together and be done with it. KSR did not change that law of this court. KSR dealt with the situation where you took Asana and you added Smith and put the censor right there on the pivot. Because there was a reason to combine those two references, there was a reason to reach the subject matter as a whole. There were only two references involved. It was not like this case where the examiner had to go to a third or fourth reference in order to find the various elements, with disparate reasons at every time. Unless the court has questions, I'll go to my rebuttal.  Yes, Your Honor. Thank you. May it please the Court. I'll turn first to the teaching away argument. And I think there are two primary responses to that. First, when Mr. Hawes was talking about how Anderson allegedly teaches away, he kept saying things like it's not good, paper checks are not preferred for this reason. He doesn't teach that they're inoperable or that a system involving both paper checks and electronic checks would not work at all. And that's the standard even the case on which he relies, the McGinley case, requires for teaching away. And second, Mr. Hawes was pointing primarily to column 15, and he skipped over lines 37 through 44 there, which teaches that to further minimize implementation costs in the electronic check embodiment, the electronic instruments may be integrated with the existing bank infrastructure, including, he says, ECP, which is the electronic check presentment system taught earlier in the Anderson embodiment, which uses paper checks, scans the information from them, and runs them through electronically, runs them through the presentment procedure that follows. He also argued that there's no reason to combine the existing hybrid system with Anderson's electronic system. But the reason is market forces, something that KSR recognized is very useful. There are millions of checking accounts in the United States today that use paper checks. And as the board recognized, Anderson probably would have recognized that you can't make an immediate switch from that paper system to an all-electronic system without any changes, without any transition period. Regarding the argument that the references are from disparate fields, that's not the case here. Here, Anderson is a checking system. It's not a client-server system that has nothing to do with checking. It's very similar, and although the examiner did have to go to other computer systems to find the additional limitations not taught by Anderson, they are all computer systems, they're all from similar fields, and that sort of thing can be brought together in a KSR-type analysis that's not destroying the subject matter as a whole. Is that the common sense analysis that KSR teaches? Yes, Your Honor. It would be common sense to, and market forces would guide you to, if you're building a computer system, you would look to other computer systems to see what they use. For example, a firewall. But does the application really give you a road map of that common sense? What if you didn't have the application? Would someone of ordinary skill in the art be looking at some of those areas without having the application in front of them? Someone of skill in the art would look at the Anderson's teachings and see that there's a check-presentment system that, although it primarily deals with something that's all electronic checks, that person of skill would recognize that there's an existing paper-check system out there, and it would be common sense not to try to drop the existing system and switch over to something that is all electronic and get everyone to convert to this all-electronic system immediately without any change. How do we step over the line between common sense and hindsight? In this case, hindsight is not an issue because these hybrid systems, which Shrek argues are not taught by Anderson, these hybrid systems are well-known in the industry, and as Dan B. Johnston says, even back in 1976, it would be reasonable for someone in this art to understand that you can combine paper checks with some sort of electronic files to get that information transmitted electronically, even though you're using a paper check. But in the record, it's pretty clear that the examiner pick-and-chose went around and selectively picked certain parts in order to comply with the application's requirements. So is that really selectively looking at the application, going out to take a look to see what it needs, to reject it and combine it that way? Is that a problem when we have the prior art in a number of areas and you pick it up and all of a sudden it becomes common sense to use it instead of hindsight? I don't think that's a problem in this case. For example, one of the teachings that the examiner added was a teaching of a firewall in Buell. Anderson doesn't use the word firewall, but it teaches that there should be some sort of gateway that controls how traffic passes from the private banking network in the public internet. That is what most people today would call a firewall. Anderson called it a gateway. The examiner said that teaching in Anderson is enough, but even if it's not, I'm going to rely on Buell. Buell teaches that in systems like this where you have private information behind what it calls a firewall, that you want to keep separate from public information, that a firewall is what to do. So it has an express teaching of a firewall. The other teaching is of a particular header that is used for the check... But the application teaches a firewall. Anderson teaches a gateway. A gateway is any door. It's a generic term. Then you're applying and switching from a gateway to a firewall, which is a totally different purpose. It can be used as a door, but it can also be used to prevent people from coming in, prevent other programs from interfering with your program, right? That's correct. Although what Anderson teaches his gateway does is control the traffic, letting some traffic in, not letting other traffic in, the sorts of features that a firewall typically is used to perform in client-server systems that exist on the internet today. And that is what the examiner recognized. And that's why the examiner said, well, if you need an express teaching of a firewall, a person skilled in the art of computer systems would recognize, looking at this gateway, that a firewall is the type of structure that can be used to perform this gateway function. It's a slightly different teaching, but it's the kind of thing that a person skilled in the art would recognize one can be applied to the other. But you would have to admit that many instances we're using the disclosure of the application with hindsight to pick and choose the references that were applied in combination for obviousness. Maybe not in this particular case, but that seems to be a roadmap for an obviousness rejection and saying, well, it's common sense to do it that way, or otherwise the teaching is not there, but the equivalent is there. It's true that in order to find the particular terms that the application uses and that the claim uses, the examiner sometimes had to go out and find an additional reference. But what the examiner said is, using his understanding of one skilled in the art, one skilled in the art would recognize that this type of feature would be used in any type of computer system. Another example is controlling the use of memory. The examiner doesn't say, well, now that you've taught me to control the use of memory, I have to go find where someone somewhere has controlled the use of memory. He says it's very common in most systems. You want to limit the use of memory, and a person skilled in the art would recognize that in a computer system you want to limit the use of memory because memory is expensive. This is the type of analysis that KSR says is perfectly appropriate. It's not simply going out and finding some disparate teaching that has never been seen in the art. It's something that the examiner is saying a person of skill in the art would entirely recognize that this is a feature of all such computer systems. And here's a reference that teaches that that fact is true. If there are no further questions, I'll waive everybody from my time. Thank you. Mr. Hawes, don't you think it's nice that this court is now understood to have common sense as well as familiarity with the law? All courts, Your Honor. I'm afraid that the Supreme Court gave everyone that privilege from the district court judges all the way up to the top. I do think I'm... You mean KSR more broadly than I do. But KSR, despite allowing common sense to play a role, still kept the roles that are already there for things like teaching away and for finding a reason, maybe not in the strict TSM sense, but still a reason for achieving this subject matter as a whole. Subject matter as a whole is in the statute for a reason. And it's what you identified, Judge Garza, I would say that the reason we need to be concerned here is because these disparate reasons that were identified by the examiner and the board point out by themselves the problem. In the brief of the director, the PTO tried to find, well, oh, I can find these reasons in Anderson. But as you'll note in the reply brief, every spot where they found one of these reasons was a part of Anderson that they wanted to throw out when they modified it to add paper checks. And the fact that the different reasons that the examiner identified are inconsistent, one saying let's reduce memory, one saying let's use more memory, also showed that this was more on the roadmap side than on the common sense side when it comes to combining a large number of references and attempt to find all the limitations in the independent plan. Now, counsel for the PTO said that teaching away only occurs when you show it is inoperable. And I would say that is not your law. Take a look. If there is critique of the prior art, that is teaching away. There was no response to the bad paper checks causing fraud losses and security problems. There was no response to the fact that no check stock is used, according to Anderson, for substantial cost savings. Now, counsel for the office did point out the paragraphs in column 15 starting on line 34 and extending down to 44. And I'll note that on line 39, that paragraph is very specific. It is referring to the electronic check embodiment. There's no reference to paper checks here. Anderson was very clear. There's the paper checks. That's the old school. Here are the specific problems. I'm critiquing them because they cause security problems. I'm critiquing them because they cause cost problems. Probably the two most important things when it comes to a financial transaction system. And then, Anderson says, here's the solution. And it's all electronic. The PTO would have you take that reference and say, rip out the electronic checks, put in paper checks. That is contrary to the specific criticisms of paper checks that are found in Anderson and ignored by the board, ignored by the briefing, and ignored by the examiner. So, for both the reasons that the teaching away is here and cannot be ignored, even under KSI, and because the prior art was cobbled together without a particular reason for achieving the subject matter as a whole, we ask you to reverse and instruct the board to find that the examiner's rejections were without support. Thank you. I'm not sure my one remaining question is really relevant, but I'm just curious. I have a minute. What is the involvement or the interest of the Federal Reserve Bank of Dallas in this particular... The Federal Reserve Bank of Dallas is the assignee of the patent, of patent application, hopefully a patent in some way. The Federal Reserve Bank of Dallas, Your Honor, is not a part of the government. It's a government chartered corporation, but it's owned by banks. So, this is not an issue of the government suing the government. So, it's doing this in its proprietary capacity, if that's the right name. I would say it's doing it in its individual capacity, but not as part of the government. Okay. Thank you. You're welcome. Thank you. Case is submitted.